```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


REFINERY INDUSTRIES, INC.        :   NO. 02-CV-4847
                                 :
vs.                              :
                                 :
SCOTT TECHNOLOGIES, INC.         :
```

**ORDER**

AND NOW, this    day of                 , 2003, upon consideration of plaintiff's motion for enlargement of time, it is hereby ORDERED that said motion is granted and that plaintiff shall have until June 2, 2003 in which to file a response to defendant's motion for summary judgment.

                                        _____
                                        DALZELL, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REFINERY INDUSTRIES, INC.         :   NO. 02-CV-4847
                                  :
vs.                               :
                                  :
SCOTT TECHNOLOGIES, INC.          :

**MOTION FOR ENLARGEMENT OF TIME**

    Plaintiff, Refinery Industries, Inc., by its undersigned counsel, respectfully moves the Court for an order pursuant to F.R.C.P. 6 enlarging the time in which to file a response to defendants' motion for summary judgment, in support of which it avers the following:

    1.   On April 18, 2003, plaintiff filed a notice of appeal and demand for trial de novo from an adverse award of the arbitrators on March 20, 2003 and paid the $300 appeal fee.

    2.   On April 28, 2003, the Court entered an Order requiring defendant to refile a motion for summary judgment, earlier filed within a week of the arbitration and denied as untimely without prejudice to renew, by May 2, 2003 and plaintiff to file a response by May 16, 2003.

    3.   Plaintiff's counsel did not receive a copy of the Order (or any renewed motion) and did not become aware of until late on May 26, 2003, upon returning from a long holiday weekend and reviewing a letter from opposing counsel, a true and correct copy of which is attached as Exhibit "A" hereto, faxed on May 22, 2003.

    4.   Plaintiffs' counsel immediately telephone chambers and

informed the Court's law clerk of the foregoing.

     5.    Plaintiff believes that its claims have merit; would not have otherwise incurred the cost of filing this case, appearing for arbitration and appealing from the adverse award; has at all times been prepared to response to defendant's legal arguments, whether presented by Rule 56 motion or otherwise.

     6.    Indeed, plaintiff prepared, served on opposing counsel, and submitted to the arbitrators a Memorandum of Law setting forth the factual and legal bases for rejecting the defenses raised in defendant's motion for summary judgment, a true and correct copy of which is attached as Exhibit "B" hereto and incorporated by reference herein.

     7.    Plaintiff's counsel would have certainly expanded this Memorandum and submitted in opposition to defendants' renewed motion for summary judgment had he received the Court's Order and the motion.

     8.    Plaintiff respectfully requests until June 2, 2003 in which to do so, primarily due to the need to obtain an affidavit from a material witness in this matter, Shalom Stone, Esquire, a New Jersey lawyer who defended plaintiff in the criminal case upon which defendant relies in moving for summary judgment and who allocuted for plaintiff, concerning what was admitted at that time. Plaintiff believes, based on conversations with Mr. Stone, that defendant's brief has distorted the allocution proceeding. Mr. Stone could not testify at the arbitration hearing due to a visit from his parents, who are from Israel; plaintiff believes

that his testimony would have led to a different result, and intends to produce Mr. Stone, either live or by deposition, in the event of a trial in this matter.

    9.   Defendant will not be unfairly or legally prejudiced by a consideration of its motion on the merits.

    10.  Plaintiff will be prejudiced by a grant of defendant's motion without any consideration of plaintiff's defenses on the merits.

    11.  The requested enlargement is short will not substantially delay the disposition of this case, whether by summary judgment or trial. . Plaintiff's counsel apologizes for any such delay or inconvenience.

    WHEREFORE, plaintiff respectfully requests an enlargement of time until June 2, 2003 in which to file a response to defendant's motion for summary judgment.

```
                                  RESPECTFULLY SUBMITTED,


                                  _____
                                  MICHAEL R. NEEDLE, P.C.
                                  MICHAEL R. NEEDLE
                                  Post Office Box 56332
                                  Philadelphia, PA  19130
                                  215-236-7420
                                  216-236-7460(F)
                                  Attorneys for Plaintiff
```

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REFINERY INDUSTRIES, INC.      :   NO. 02-CV-4847
                               :
vs.                            :
                               :
SCOTT TECHNOLOGIES, INC.       :

**MEMORANDUM OF LAW**

Plaintiff, Refinery Industries, Inc. ("Refinery"), respectfully submits this Memorandum of Law on the legal issues in the above-captioned matter.

**I. CONTRACT CLAIM**

Refinery seeks a refund of monies paid Scott for 195 gas testers which were shipped in a defective and non-conforming state. Defendant argues that this claim is barred by Refinery's conviction under 50 U.S.C. §1705 for violating Executive Order No 13059, 62 Fed.Reg. 44531, which provide in pertinent part:

Sec. 2. * * * the following are prohibited:

(a) the exportation, reexportation, sale, or supply, directly or indirectly from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran, including the exportation, exportation, sale or supply of any goods, technology or services of a person to a third country undertaken with knowledge or reason to know that:

(1) such goods, technology or services are intended specifically for supply, transshipment or exportation, directly or indirectly, to Iran or the Govern of Iran. 62 Fed.Reg. 44531

(b) Whoever willfully violates or willfully attempts to violate any license, order, or regulation issued under this title shall upon conviction be fined not more than $50,000, or, if a natural person, may be imprisoned for not more than ten years, or both; and any officer, director, or agent of any corporation who knowingly participates in such violation

may be punished by like fine, imprisonment, or both. 50 U.S.C. §1705(b)

As a general rule, courts will not enforce an illegal contract. On the other hand, a party to an executed illegal contract will not be denied restitution unless in pari delicto with the other party. See e.g. *In re Resorts International, Inc.*, 181 F.2d 505, 512 (3d Cir. 1999); *National Petrochemical Co. V. T/T Stolt Sheaf*, 930 F.2d 240 (2d Cir. 1991). North Carolina law, which should apply here,[1] is the same. *Bessemer Imp. Co. V. Grensboro*, 101 S.E.2d 336 (N.C. 1958); *Davis v. Smoot*, 97 S.e> 488 (N.C. 1918); *Occidential Life Insurance Co. Of North Carolina v. Part Ryan and Associates, Inc.,* 496 F.2d 1255 (4th Cir. 1974), cert. den. 419 U.S. 1023. Moreover, the North Carolina courts have repeatedly held that "courts will not extend the terms of a penal contract to avoid a contract unless such a result was within the intent of the legislature in enacting the

---

[1] Pennsylvania law, including Pennsylvania choice of law rules, apply to this issue. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). This applies to the defense to a contract claim of illegality. *Vector Security Inc. v. Stewart*, 88 F.Supp2d 395, 399n.3 (E.D.Pa. 2000). "Pennsylvania applies t law of the place with the most interest in the contract and that is most intimately concerned with the outcome." Vector Security, supra. That is obviously North Carolina in this case. North Carolina is where the offer to purchase was accepted and, thus, where the contract was made. *Craig v. W.J. Thiele & Sons, Inc.*, 149 A.2d 35 (Pa. 1959)("the place of making a contract is not where the offer is made but where it is accepted.") North Carolina was where the goods were made and it obviously has a greater interest than Pennsylvania in determining whether the alleged illegality protects a North Carolina based company from liability for shipping defective goods.

statute." *Furr v. Fonville Morrisey Realty, Inc.*, 503 S.E.2d 401, 405 (N.C.App. 1998), citing *Marriott Finance Services v. Capital Funds, Inc.*, 217 S.E.2d 551, 556 (N.C. 1975), reasoning:

> illegality is a defense to the enforcement of an otherwise binding, voluntary contract in violation of a statute only where the party seeing to void the contract is a victim of the substantive evil the legislature intended to prevent.

See also: *Restatement of Contracts 2d, §178,* which provides the following general test for whether a contract is unenforceable for "illegality":

> (1) A promise or other term of an agreement is unenforceable on the grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against enforcement of such terms,
>
> (2) in weighing the interest in the enforcement of a term, account is taken of
>
>> a. The parties' justified expectations.
>>
>> b. Any forfeiture that would result if enforcement were denied, and
>>
>> c. Any special public interest in enforcement of the particular term.
>
> (3) in weighing a public policy against enforcement of a term, account is taken of
>
>> a. The strength of that policy as manifested by legislation or judicial decisions,
>>
>> b. The likelihood that a refusal to enforce the term will further that policy,
>>
>> c. The seriousness of any misconduct involved and the extent to which it was deliberate, and
>>
>> d. The directness of the connection between that misconduct and the term.

In the case at hand, the government dropped charges against Reza Hashemi, Refinery's sole officer and shareholder, and

3

accepted a plea by Refinery that it had "reason to know" that the gas detectors were intended for transshipment to Iran.

On the other hand, testimony by Neil Dovealla of Scott and documents from the government's investigation and prosecution of Refinery which Scott seeks to introduce show:

(1) that Refinery knew the 245 gas testers were intended for supply to Iran as a result of prior efforts of the National Iranian Gas Company to order like testers in the same quantities through an "Overseas Steel Corp." and direct information from an informant, variously identified as "DN" (Dunberg Affidavit) or an "individual in Boston" (Criminal Complaint, Attachment "B"),to this effect.

(2) Scott, instead of refusing to sell to Refinery as it had done in the case of Overseas Steel, sold them to Refinery, in thus knowingly violating the executive order and 50 U.S.C. §1702.

(3) Scott shipped goods rendered defective at the request of the government, issued false certifications of the goods, took Refinery's money for these defective goods, and maintains that it has the right to keep this money, essentially because government agents told it that it could keep the proceeds of the fraudulent sale.

(4) the goods in question are non-military.

(5) the export controls in question do not contemplate or permit the fraudulent course of conduct of Scott. They do not foreclose a defrauded buyer from recovering. They impose specified penalties on the buyer.

Under these circumstances, Refinery is not in pari delicto

4

with Scott and should recovery the moneys paid under false pretenses for defective goods to a vendor who knew the goods would be resold by Refinery's buyer to Iran.

**II. FRAUD**

Scott's conduct was clearly a fraud on Refinery. It was paid money in reliance on a certification which was knowingly and intentionally false. Scott argues the statute of limitations. This should run from the time Refinery knew or should have known of the fraud, which was not until the fall of 2000 when the full details of the government's actions were learned in discovery in the criminal case. Only then did Refinery know that the goods had been made defective by Scott (rather than the government), while Scott was issuing and obtaining payment on false certifications.

                                    _____
                                    MICHAEL R. NEEDLE, P.C.
                                    MICHAEL R. NEEDLE
                                    Post Office Box 56332
                                    Philadelphia, PA  19130
                                    215-236-7420
                                    216-236-7460(F)
                                    Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing motion was sent by fax to counsel for defendant, Barbara Brigham Denys, Harkins Cunningham, 2800 One Commerce Square, 2005 Market Street, Philadelphia, PA 19103 (215-851-6710) on May 27, 2003.

_____
MICHAEL R. NEEDLE