```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| REFINERY INDUSTRIES, INC. | : | CIVIL ACTION |
| v. | : | |
| SCOTT TECHNOLOGIES, INC. | : | NO. 02-4847 |

ORDER

AND NOW, this 3rd day of June, 2003, upon consideration of the uncontested motion for summary judgment of defendant, Scott Technologies, Inc.,[1] and the Court finding that:

(a)   The undisputed facts are as follows:

(i)   Defendant Scott Technologies ("Scott") is the manufacturer of gas testers, and plaintiff Refinery Technologies ("Refinery") is a United States exporter, see Compl. ¶¶ 6, 7; Answer ¶ 6;

(ii) On March 3, 1998, Refinery placed a purchase order with Scott for gas testers, Compl. ¶ 9; Mot. for Summ. J., Ex. B (Purchase Order);

(iii) Upon receiving the purchase order, Scott became suspicious that Refinery intended to ship the gas testers that it requested, directly or indirectly, to Iran, in violation

---

[1] Under Local Rule 7.1(c), such a motion may not be granted as uncontested but must be considered on the merits.
    Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, a court must view the evidence, and make all reasonable inferences from it, in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). Once the moving party has carried this initial burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Id. at 587 (quoting Fed. R. Civ. P. 56(e)).

of Executive Order No. 13059[2], Doveala Dep. at 16-24, 71-75, 94-119;

    (iv) Scott immediately contacted the United States Department of Commerce ("DOC") to report the peculiarities it noticed about the purchase order and requested guidance on how to proceed, Doveala Dep. at 79-80;

    (v) Scott thereafter specifically complied with the DOC's instructions, Doveala Dep. at 120-27; see generally Dunberg Aff.;

    (vi) There were two shipments (or installments) in question;

    (vii) Scott delivered the first shipment of gas testers to Refinery on April 29, 1998, Scott Invoice 227450; Hashemi Dep. at 43;

    (viii) Refinery apparently repackaged the gas testers, removing from them serial numbers and other identifying markings, and shipped them to JFK Airport;

    (ix) U.S. Customs intercepted the gas testers when they arrived at JFK Airport;

    (x) U.S. Customs did not, however, confiscate the gas testers;

    (xi) Rather, the Customs Service covertly substituted the gas testers with temporarily inoperable gas

---

[2] Executive Order 13059 prohibits the export of goods, technology, and services from the United States to Iran, or to a third country, with knowledge or reason to know that such goods and services are intended for reshipment to Iran. President Clinton issued Executive Order 13059 on August 19, 1997. Mot. for Summ. J., Exs. R, S.

testers[3] -- gas testers with the battery holders removed -- which Scott furnished the DOC;

 (xii) The DOC then returned the original gas testers to Scott, Dunberg Aff. at ¶¶ 13-22;

 (xiii) As to the second installation, at the direction of the DOC, Scott removed the battery holders before shipping the gas testers to Refinery;

 (xiv) Refinery then re-shipped the (inoperable) gas testers to JFK Airport, where they were destined for export to Iran, but they were instead confiscated by the United States Government, Doveala Dep. at 152; Notice of Seizure (8/21/98);

 (xv) Refinery pleaded guilty in the United States District Court for the District of New Jersey for attempting to send the gas testers to Iran in violation of Executive Order 13059, see Mot. for Summ. J., Ex. R (plea agreement), Ex. S. (transcript of guilty plea); and

 (xvi) Refinery paid Scott $146,874.65 for the gas testers, even though the gas testers it received were inoperable or confiscated, Compl. ¶¶ 17, 21; Answer;

 (b) in one sense, Refinery here did not get the benefit of the bargain because rather than getting live gas testers which it could illegally export to Iran, Refinery received dud gas testers and a federal prosecution;

 (c) Refinery has filed this case in order to recover the investment it made when it tried to smuggle gas testers to Iran;

---

 [3] Also known as "dud" gas testers.

  (d) Refinery seeks to recoup the $146,874.65 it paid Scott for the gas testers and advances theories of relief of fraud, breach of contract, and unjust enrichment;

  (e) The claim of fraud is barred by the statute of limitations[4];

  (f) Though the statute of limitations for fraud is two years, see Ross v. Johns-Mansville Corp., 766 F.2d 823, 826(3d Cir. 1985) (borrowing in diversity cases the limitations rule of the forum state), 42 Pa. C.S. § 5524(7), Refinery did not file this action until July 19, 2002, or more than two years from the latest date that Refinery discovered the asserted "fraud"[5];

  (g) The claim of breach of contract also fails;

  (h) "The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract," Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 77 (1982);

  (i) It is true that the contract of Refinery with Scott for purchase of gas testers was not illegal per se;

  (j) Nevertheless, because the contract was part and parcel of a larger plan to provide gas testers to Iran in

---

[4] We need not comment on the novelty (or the chutzpah) of a claim that defendant committed "fraud" by cooperating in a Government sting operation and not revealing that fact to its target.

[5] On May 16, 2000, the Government notified Refinery in the context of its criminal investigation that the gas testers which Scott had supplied Refinery were "inoperable." Mot. Summ. J., Ex. W. Of course, Refinery probably discovered that the gas testers were inoperable long before that -- when it received them in August of 1998. Mot. Summ. J., Ex. I. Either way, this action is untimely.

violation of the United States trade embargo, it is unenforceable, see Nat'l Petro. Co. of Iran v. The M/T Stolt Sheaf, 930 F.2d 240, 243 (2d Cir. 1991) (holding "[t]hus, even assuming that, viewed in isolation, the contracts underlying its claims are legal, NPC is nonetheless prohibited from enforcing those agreements in a United States court because they are admittedly part and parcel of a larger plan to violate the United States trade embargo");

　　　　(k)　The doctrine of unjust enrichment does not afford relief because there is no evidence that defendant has been unjustly enriched;

　　　　(l)　In the first installation, Scott manufactured the same number of gas testers requested in the purchase order, and, although the DOC returned those gas testers to Scott, Scott also produced a duplicate supply of inoperable gas testers;

　　　　(m)　In the second installation, Scott manufactured the exact number of gas testers called for in the purchase order, and rendered them inoperable merely by removing their battery holders;

　　　　(n)　Thus, as Scott manufactured the gas testers required by the purchase order, it was not unjustly enriched;

　　　　(o)　To the extent that Scott may have made more of a profit by virtue of the fact that it cooperated with the Government to stop Refinery from smuggling gas testers to Iran

than it would have if it had silently gone along with the contract,[6] any profit so received is not unjust; and

    (p)  The doctrine of unclean hands also counsels against us granting Refinery relief, see Lucey v. W.C.A.B., 732 A.2d 1201, 1204 (Pa. 1999) ("The doctrine of unclean hands is derived from the unwillingness of a court to give relief to a suitor who has conducted himself so as to offend the moral sensibilities of the judge, and the doctrine has nothing to do with the rights and liabilities of the parties.");

    It is hereby ORDERED that:

    1.  Defendant's motion for summary judgment is GRANTED;

    2.  JUDGMENT IS ENTERED in favor of Scott Technologies, Inc. and against Refinery Industries, Inc.; and

    3.  The Clerk shall CLOSE this case statistically.

BY THE COURT:

_____
Stewart Dalzell, J.

---

[6] It may for example be that providing the gas testers without the battery holders saved Scott costs. Of course, the value of Scott's time cooperating with the Government may well offset any such savings.